# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ASPEN HOMEOWNERS' ASSOCIATION, a Washington nonprofit corporation, <br><br> Respondent, <br><br> v. <br><br> ZIQIN DU and HONG YANG, as husband and wife and the martial community composed thereof, <br><br> Appellants. | No. 88437-9-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

FELDMAN, J. — Ziqin Du and Hong Yang (collectively Du) appeal from the trial court's orders and judgment following a jury verdict in favor of Aspen Homeowners' Association (Aspen) on its claims against Du for erecting a metal structure on his lot without Aspen's prior approval as required by the governing Declaration of Covenants, Conditions, Restrictions and Easements (CC&Rs). Du argues the trial court erred in ordering that the structure be removed and awarding attorney fees and costs to Aspen. Finding no error, we affirm and award Aspen attorney fees and costs on appeal.

I

Du owns property and lives in a residential community, also referred to herein as "Aspen," in Marysville, Washington. The community is subject to the CC&Rs, which Aspen is charged with enforcing. The CC&Rs establish an

Architectural Control Committee (ACC) that reviews proposed plans and specifications for improvements and construction. As will be discussed further below, homeowners must apply for and obtain approval from the ACC prior to erecting "all residences and other structures within Aspen."

In 2017, without applying for approval, Du erected a metal structure on his lot to store his recreational vehicle and boat. In April 2018, Aspen notified Du of the compliance violation and directed him to "submit the required ACC form for the project you have completed" within seven days. Du did not comply. In September 2018, Aspen imposed a $25 fine and again directed Du to submit the required application form. In response, Du claimed the structure was a "metal tarp" and "temporary setup" not subject to the CC&Rs. Aspen again offered to allow Du to submit a late application, but he did not do so.

In October 2018, Aspen imposed a $75 fine and directed Du to either submit an application for approval or remove the structure. Du did not comply. From October 2018 through June 2019, Aspen sent numerous violation letters to Du demanding that the metal structure be removed immediately. In April 2019, Aspen warned Du that it would move forward with litigation if he did not remove the structure within 14 days, but Du continued to insist that the CC&Rs did not apply. Finally, in June 2019, Du sent Aspen two letters claiming to initiate the approval procedure for the "metal tarp," but did not submit the required ACC form. Aspen did not respond.

On June 24, 2019, Aspen filed a complaint for declaratory judgment and lien foreclosure. The complaint alleged that Du "violated the provisions of article 4 of the [CC&Rs] by erecting a carport metal structure without the written consent

- 2 -

or permission of the [ACC]" and sought removal of the structure and recovery of attorney fees. The complaint also alleged unpaid fines in the amount of $3,491.83 and sought a judgment declaring that the fines constituted assessments subject to foreclosure, but Du successfully moved to dismiss the foreclosure action and Aspen gave up its claim for fines.

Following a five-day trial, the jury found by special verdict that Du violated the CC&Rs and that Aspen's offer to allow Du to submit a late application was revoked before Du submitted his alleged applications in June 2019. Du moved for reconsideration and a new trial, and Aspen moved for an award of attorney fees. The trial court entered an order denying reconsideration, requiring Du to remove the metal structure, and awarding attorney fees and costs to Aspen.[1] The court contemporaneously entered judgment against Du for attorney fees totaling $152,983.05 and costs totaling $6,759.84. This timely appeal followed.

II

A.    The trial court's compliance order

Du argues the trial court erred as a matter of law by ordering that the metal structure be removed. We disagree.

We interpret CC&Rs "in accordance with accepted rules of contract interpretation." *Kiona Park Ests. v. Dehls*, 18 Wn. App. 2d 328, 334, 491 P.3d 247 (2021). Contract interpretation is a question of law that we review de novo. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 769, 275 P.3d 339 (2012). The

---

[1] Du removed the structure after the court found him in contempt for refusing to do so. Du's supplemental notice of appeal designates the contempt order as a decision he wants reviewed under RAP 5.3(a), but he does not assign error to that ruling and presents no argument that the trial court erred in so ruling as required by RAP 10.3(a)(4) and (6). Any such argument is therefore waived. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

primary purpose of contract interpretation in this context is to determine the drafter's intent. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 250, 327 P.3d 614 (2014). In determining that intent, "we give covenant language 'its ordinary and common use' and will not construe a term in such a way 'so as to defeat its plain and obvious meaning.'" *Id.* (quoting *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993), and *Riss v. Angel*, 131 Wn.2d 612, 623, 934 P.2d 669 (1997)).

Aspen's "Governing Documents" include its CC&Rs, articles of incorporation, bylaws, rules and regulations, and the rules and procedures of the ACC. Section 2.8.1 of the CC&Rs empowers the ACC to "review proposed plans and specifications for construction of all residences and other structures within Aspen." Under section 2.8.2, "[a] preliminary application for approval must be submitted in writing by the Owner to the [ACC]" and must include "such plans and specifications for the proposed work as the [ACC] determines to be necessary to enable it to evaluate the proposal." Section 4.2 similarly provides that "[n]o . . . other structure shall be commenced, erected, or maintained upon a Lot . . . until after the details and written plans and specifications . . . shall have been submitted to and approved in writing by the [ACC]." Section 4.2.5 prohibits "carports," but authorizes the construction of a "shelter" for the "storage of a boat and/or camping trailer kept for personal use" provided that the structure "is compatible in design and decoration with the residence constructed on such Lot and has been approved by the [ACC]." Under section 2.8.6 of the CC&Rs, a homeowner who fails to comply with the ACC's rules and procedures "shall be considered in violation" of the CC&Rs ten days after receiving written notice.

The jury found that Du (1) violated sections 2.8.1 and 2.8.2 by failing to submit a preliminary application for approval of a structure within Aspen, (2) violated section 4.2 by failing to submit an application prior to erecting a "structure," (3) constructed a "carport" in violation of section 4.2.5, and (4) constructed a "shelter for the storage of a boat and/or camping trailer" that was not compatible in design and decoration with the residence and that lacked the ACC's approval. And it further found that Aspen's offer to permit Du to submit a late application was revoked prior to Du's alleged applications in June 2019, Du does not challenge the jury's special verdict, so it is a verity on appeal. *See Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 513, 814 P.2d 1219 (1991) ("The jury verdict that Chance and Malarkey are liable on the tortious interference claim has not been challenged and is therefore a verity on appeal and at the new trial."). Instead, Du asserts several discrete errors, which we address in turn below.

First, Du argues the trial court erred in ordering forced removal of a structure that was automatically deemed approved under CC&R sections 2.8.3 and 2.8.5. Section 2.8.3 provides:

> [I]n the event that the Committee fails to respond to an Owner's complete and properly submitted application within the time frame as set forth above after the Committee has notified the Owner that the application is complete or if no suit to enjoin the construction has been·commenced prior to the completion thereof, formal written approval will not be required, and the provisions for approval shall be deemed to have been fully complied with.

Section 2.8.5, in turn, authorizes the ACC to "grant exemptions and variances from the rules and procedures of the [ACC]" upon written request.

Du claims the application letters he submitted in June 2019 were approved by default under the foregoing provisions because Aspen failed to respond to them. This argument is unpersuasive. The trial court correctly stated in its order denying reconsideration and requiring removal of the structure:

> Section 2.8.2 requires a preliminary application and discusses the application in terms of a "proposal" for construction. Preliminary is defined by Merriam's Dictionary as "coming before and usually forming a necessary prelude to something else." There is no time limit in Section 2.8.2 because the application clearly must be submitted before construction to get it approved. Not over a year after construction is completed. Any other reading of the CC&Rs would negate the purpose of obtaining approval.

The jury determined that Du violated sections 2.8.2, 4.2, and 4.2.5 by failing to submit an application for preapproval before erecting the structure and that Aspen's offer to allow Du to submit an untimely application had been revoked. Thus, the ACC was not required to respond to the application and it was not deemed approved under section 2.8.3.

Second, Du claims certain language in the trial court's orders denying Aspen's motions for summary judgment constitutes binding authority that prevented the trial court from entering an order of removal after the jury rendered its special verdict. But the trial court denied Aspen's summary judgment motions because there were material questions of fact requiring a jury determination. Contrary to Du's argument, Washington law is clear that "the denial of a summary judgment is not a final order and has no preclusive effect on further proceedings." *In re Estate of Jones*, 170 Wn. App. 594, 605, 287 P.3d 610 (2012). Du's reliance on these summary judgment orders is therefore misplaced.

Third, Du argues the court erred in ordering forced removal of the structure because the CC&Rs and Bylaws do not authorize such a remedy. This argument likewise fails. In the event of a violation, section 2.8.6 of the CC&Rs empowers Aspen "to assess a charge against the Owner commensurate with the violation . . . and/or pursue any other remedy at law including, but not limited to, an action for specific performance." Section 15.4 of the Bylaws further states that "[f]ailure to comply with a provision of the Governing Documents . . . shall be grounds for an action to recover sums due for damages" and/or "for the issuance of injunctive relief." CC&R section 7.1 confers upon Aspen "the right to enforce" the CC&Rs "by any appropriate proceeding at law or in equity." And section 7.2 establishes a "conclusive presumption that any breach of the [CC&Rs] . . . cannot be adequately remedied by an action at law or exclusively by recovery of damages." These provisions plainly authorized the court to grant Aspen's request to order Du to remove the metal structure.

Lastly, Du argues the trial court wrongly ordered forced removal under CC&R section 4.11, which obligates owners to maintain their lots and homes "in a clean, sightly and sanitary condition" and authorizes Aspen to "enter upon any lot which has been found to violate the foregoing standards in order to restore the home or Lot to such standards." Du points out that Aspen's complaint asked the court to declare that section 4.11 authorizes Aspen to "take such actions as necessary to immediately remove the offending structure by entering upon the property . . . in the event that the Defendants do not remove it by a date certain as ordered by the Court." He asserts that Aspen did not allege or prove any violation

of section 4.11 and contends that section 4.11 does not authorize the trial court's remedy.

Du's argument is unavailing. "Under notice pleading standards, a complaint need contain only '(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which he deems himself entitled.'" *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wn. App. 840, 865, 309 P.3d 555 (2013) (quoting CR 8(a)). A complaint "should adequately alert the defendant of the claim's general nature" and "give the defendant 'fair notice of what the claim is and the ground upon which it rests.'" *Est. of Dormaier v. Columbia Basin Anesthesia*, P.L.L.C., 177 Wn. App. 828, 853-54, 313 P.3d 431 (2013) (quoting *Williams v. W. Sur. Co.*, 6 Wn. App. 300, 304-05, 492 P.2d 596 (1972)). Here, Aspen's complaint sought a determination that Du violated article 4 of the CC&Rs, and Aspen sought removal of the structure as a remedy. The complaint sufficiently alerted Du as to the nature and basis of Aspen's claims. And Aspen's subsequent pretrial filings further notified Du as to the legal theories upon which it sought relief. Contrary to Du's arguments, the trial court did not err in ordering him to remove the structure.

B.    The trial court's award of attorney fees and costs

Du also argues the trial court erred in awarding attorney fees and costs to Aspen because it did not substantially prevail on the central issues and the award was unreasonable. We disagree.

"Appellate courts apply a two-part review to attorney fee awards." *Winter v. Dep't of Soc. & Health Servs.*, 12 Wn. App. 2d 815, 836, 460 P.3d 667 (2020). First, we review de novo whether a legal basis exists for awarding attorney fees.

*Id.* Second, we review a discretionary decision to award or deny attorney fees and the reasonableness of the award for abuse of discretion. *Id.* "A trial court abuses its discretion when it exercises discretion on untenable grounds or for untenable reasons." *Ewing v. Glogowski*, 198 Wn. App. 515, 521, 394 P.3d 418 (2017).

"In Washington, attorney fees may be awarded only when authorized by a private agreement, a statute, or a recognized ground of equity." *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004). Aspen requested fees under section 10.5 of the CC&Rs, which provides:

> In the event of a suit or action to enforce any provision of this Declaration or to collect any money due hereunder or to foreclose a lien, the unsuccessful party in such suit or action shall pay to the prevailing party all costs and expenses, including title reports, and all attorneys' fees that the prevailing party has incurred in connection with the suit or action, in such amounts as the court may deem to be reasonable therein, and also including all costs, expenses, and attorneys' fees incurred in connection with any appeal from the decision of a trial court or any intermediate appellate court.

Section 15.4 of Aspen's Bylaws further provides that "[i]n any action brought by the Association . . . the prevailing party shall be entitled to recover as part of its judgment a reasonable sum for attorney's fees incurred in connection with the action, in addition to taxable costs and all expenses incurred."

Aspen also sought fees based on RCW 4.84.330, which provides that the prevailing party in a contract action is entitled to attorney fees if the contract authorizes such an award. This statute "mandates the award of fees to the prevailing party, with no discretion except as to the amount." *Crest Inc. v. Costco Wholesale Corp.*, 128 Wn. App. 760, 772, 115 P.3d 349 (2005). Generally, a prevailing party is the party who received "an affirmative judgment in its favor" or the party who "substantially" prevailed based on "the extent of the relief afforded

- 9 -

[to] the parties." *McLelland v. Paxton*, 11 Wn. App. 2d 181, 222-23, 453 P.3d 1 (2019). "If both parties prevail on major issues, it is appropriate to let each bear their own costs and fees." *Transpac Dev., Inc. v. Oh*, 132 Wn. App. 212, 217, 130 P.3d 892 (2006). Additionally, where multiple distinct and severable claims arise from a contract, and both parties prevail in part, a proportional fee award is appropriate. *Transpac*, 132 Wn. App. at 218 (citing *Marassi v. Lau*, 71 Wn. App. 912, 916-917, 859 P.2d 605 (1993)). "A proportionality approach awards the plaintiff attorney fees for the claims it prevails upon, and likewise awards fees to the defendant for the claims it has prevailed upon. The fee awards are then offset." *Id.* (quoting *Marassi*, 71 Wn. App. at 917).

Here, Aspen requested an award of attorney fees totaling $197,677.80 and legal expenses and costs totaling $15,308.00. In its order granting fees, the trial court observed that Aspen "prevailed on their claims related to the illegality and necessity to remove the structure" and that Du "prevailed on the foreclosure action and ultimately [Aspen] gave up their claims for fines and fees imposed." Because Du proceeded pro se and had no attorney fees to collect, the court reduced the amount of fees and costs awarded to Aspen by declining to award Aspen fees and costs related to its unsuccessful summary judgment motions, motions and evidence that were stricken, and response to Du's partially successful motions for summary judgment and for reconsideration. After finding that Aspen was "successful on the issues that remained for trial" and that the rates Aspen charged were reasonable, the court granted Aspen a reduced award totaling $152,983.05 in fees and $6,759.84 in costs.

Du argues the reduced fee award is unreasonable because Aspen "achieve[d] only limited success on a small portion of its claims."[2]  Although Aspen did not prevail on its claim for fines and foreclosure of the lien for those fines, the matter proceeded to trial on the issues of whether Du violated the CC&Rs by erecting a metal structure on his lot without seeking prior approval and whether it was appropriate for the court to order removal of the structure as a remedy. Further, the court noted that Du rejected Aspen's good faith attempt to settle the dispute on terms highly favorable to Du in September 2023.  On this record, the trial court did not abuse its discretion in granting a reduced award of fees and costs to Aspen under CC&R section 10.5 and RCW 4.84.330.[3]

Lastly, Du argues that the trial court erred in failing to award his costs under RCW 4.84.010, which authorizes courts to award certain narrowly defined costs to the prevailing party.  But Aspen substantially prevailed, so Du was not entitled to costs on this basis.  *See O'Connell v. MacNeil Wash Sys. Ltd.*, 2 Wn. App. 2d 238, 256, 409 P.3d 1107 (2017) ("Because MacNeil does not prevail, we decline to award it statutory attorney fees and costs under RCW 4.84.010 or costs under RAP 14.2.").  Further, Du did not ask the trial court to award his costs under RCW

---

[2] Du also asserts that the trial court failed to deduct specific attorney fees involving work that he characterizes as "unsuccessful, irrelevant, or unused."  But Du's conclusory claim is insufficient for this court to adequately evaluate and, because it was raised for the first time in reply, Aspen has had no opportunity to respond.  "We will not consider issues argued for the first time in the reply brief."  *Ainsworth v. Progressive Cas. Ins. Co.*, 180 Wn. App. 52, 78 n.20, 322 P.3d 6 (2014).

[3] Du also asserts that the trial court's award of fees in favor of Aspen is inequitable because he proceeded pro se, but he cites no authority establishing that this is a valid basis to reduce a fee award.  "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *Better Bus. Bureau Great W. v. Dep't of Revenue*, 32 Wn. App. 2d 748, 763, 561 P.3d 266 (2024) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)); *see also* RAP 10.3(a)(6).

4.84.010. Instead, he sought costs under CR 11 and RCW 4.84.185 as a sanction for frivolous litigation. For these reasons, the court did not abuse its discretion (nor did it err) in denying Du's request for an award of costs under RCW 4.84.010.

III

Aspen also requests an award of reasonable attorney fees and costs on appeal. RAP 18.1(a) allows a party to recover attorney fees on appeal where applicable law permits such a recovery. A contractual provision authorizing attorney fees is authority for granting fees on appeal. *Leen v. Demopolis*, 62 Wn. App. 473, 485, 815 P.2d 269 (1991). The CC&Rs and RCW 4.84.330 authorize an award of attorney fees to the prevailing party on review. Because Aspen has prevailed on appeal, we grant its request for an award of reasonable attorney fees and costs on appeal subject to compliance with RAP 18.1.

Affirmed.

Feldman, J.

WE CONCUR: